## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

JOHN DOE 1,                                    Case No. 1:22-CV-02139

      Plaintiff,

      -vs-                                    JUDGE PAMELA A. BARKER

VARSITY BRANDS, LLC, et al.,                   MEMORANDUM OPINION AND
                                               ORDER
      Defendants.

Plaintiff John Doe 1 filed a Complaint in this matter on November 28, 2022 against 11 defendants. (Doc. No. 1.)  Before the Court is Defendant Taji Davis's Motion to Dismiss.  (Doc. No. 98.)  On June 29, 2023, Doe filed an Opposition to Davis's Motion, to which Davis replied on July 12, 2023.  (Doc. Nos. 100, 106.)  For the following reasons, Davis's Motion is GRANTED IN PART and DENIED IN PART.  Additionally, for the same reasons, the Court sets aside the entry of default against Defendants Brandon Hale and ShowPro Choreography, dismisses the federal claims against them, and declines supplemental jurisdiction over the remaining state law claims, thereby concluding this case.

## I.  Factual Allegations

Plaintiff Doe is a former competitive cheerleader.  (Doc. No. 1, ¶ 1.)  Doe alleges that when he was 17 years old, he was sexually abused by two cheerleading choreographers, Defendants Brandon Hale and Taji Davis, who were allegedly affiliated with Defendant ShowPro Choreography ("ShowPro") and Defendants Varsity Spirit, LLC, Varsity Brands, LLC, and Varsity Brands Holding Company (collectively, "the Varsity Defendants").  (*Id.* at ¶ 4.)  In addition to pursuing claims against Hale, Davis, and ShowPro, Doe also seeks to hold the Varsity Defendants, Varsity Spirit founder Jeff

Webb, Charlesbank Capital Partners, LP, Bain Capital, LP, USA Cheer, and USASF liable for misrepresenting the safety of Varsity-affiliated gyms and competitions, and for failing to adopt and/or enforce adequate policies to prevent and/or investigate sexual abuse of minor athletes by adults affiliated with various cheerleading organizations. (*Id.* at ¶ 3, 5-8.)

### A. All-Star Cheerleading

This case involves myriad organizations and individuals associated with the sport of all-star cheerleading. (Doc. No. 1.) Private all-star cheerleading is a highly competitive and fast-paced sport that incorporates elements of cheer, dance, and tumbling. (*Id.* at ¶¶ 34-35.) All-star cheerleading demands that its young athletes and their families invest significant amounts of time and money. (*Id.* at ¶ 38.) Competitive cheerleading is not subject to traditional "seasonal" limitations but can take place year-round. (*Id.* at ¶ 36.) Doe alleges that athletes can expect to spend between $3,000 to $7,000 per season, and that some families may spend up to $20,000 per year for transportation, lodging, membership and entrance fees, merchandise, uniforms, and accessories related to training for, and competing in, multiple all-star competitions throughout the year. (*Id.* at ¶¶ 36-38.) According to Doe, the competitive cheer industry generates billions of dollars in annual revenue and may serve up to four million athletes. (*Id.* at ¶ 51.)

Doe alleges that Defendant Jeff Webb began his career in cheerleading in the early 1970s, and began monetizing the operation of cheerleading camps throughout the 1970s and 1980s. (*Id.* at ¶¶ 40-43.) In the 1980s, Webb founded an organization called the Universal Cheerleaders Association, which eventually became Varsity Spirit. (*Id.* at ¶ 42-43.) Initially, Varsity Spirit began as a cheer camp provider, but gradually expanded its operations to include hosting competitions, merchandising, branding, social media, and gym ownership and/or management. (*Id.* at ¶¶ 44-45.) By the early

2000s, Varsity Spirit's parent corporation, Varsity Brands, represented that it was the country's largest designer, marketer, and supplier of cheerleading and dance team uniforms and accessories, the largest operator of cheer and dance team training camps and clinics, a leading organizer of extracurricular activity special events, a major provider of studio dance conventions and competitions, and producer of studio dance apparel for studio dance competitions. (*Id.* at ¶ 46.) However, even as early as 2002, Varsity Brands' largest source of revenue allegedly came from its connection with all-star cheer, through its subsidiary Varsity Spirit. (*Id.* at ¶ 47.)

Doe alleges that from 2014 through 2018, Charlesbank, a private equity firm, wholly owned the Varsity Defendants. (*Id.* at ¶ 125.) Doe alleges that in 2018, Bain Capital, another PE firm, purchased the Varsity Defendants from Charlesbank for $2.8 billion, although Charlesbank retained a minority stake in the business. (*Id.* at ¶ 127.)

According to Doe, there are two non-profit organizations that oversee competitive cheerleading in the United States: USASF and USA Cheer. (*Id.* at ¶¶ 23, 24.) According to Doe, Webb and the Varsity Defendants were heavily involved in the creation of USASF and USA Cheer, and remain involved in the operation of both organizations. (*Id.*) For example, the Varsity Defendants allegedly created USASF through a $1.8 million interest-free loan, and the USASF's non-profit charter certificate lists the Varsity Defendants' address as USASF's address. (*Id.* at ¶ 90.) Likewise, Doe alleges that in 2007, Webb and Varsity Spirit founded USA Cheer through another interest-free loan from the Varsity Defendants. (*Id.* at ¶ 99-100.) Allegedly, USA Cheer shared an address with the Varsity Defendants. (*Id.*) Doe further alleges that the Varsity Defendants submitted the original trademark application for the marks "U.S. All Star Federation" and "USASF." (*Id.* at ¶ 103.) Doe further alleges that for the first 15 years of USASF's existence, its offices were located at

3

Varsity Spirit's corporate address, a Varsity representative answered USASF's phones, USASF employees were paid by Varsity, Varsity cashed checked issued to USASF, and Varsity Spirit was listed as the owner of USASF. (*Id.* at ¶ 104.) Doe alleges that the Varsity Defendants also exerted control over the USASF and USA Cheer by maintaining control over the organizations' respective boards of directors. (*Id.* at ¶¶ 106, 109-110.)

Due to Webb's and the Varsity Defendants' alleged total control over USASF and USA Cheer, Webb and the Varsity Defendants are able to control all aspects of all-star cheerleading, including the following alleged examples:

- All athletes cheering on behalf of Varsity-affiliated gyms are required to purchase USASF memberships to compete at Varsity-sponsored events;

- All gyms, coaches, and vendors who wish to compete at and/or attend and/or offer products/services at Varsity events must also become members of USASF and pay monthly and/or annual fees to USASF, USA Cheer, and the Varsity Defendants;

- The Varsity Defendants require gyms to sign multi-year supply contracts whereby the gyms are paid cash rebates from Varsity Spirit for buying Varsity-branded merchandise, participating in Varsity-sponsored events, and working with Varsity-approved vendors;

- All athletes must pay annual fees to the Varsity Defendants for music, training, competition attendance, uniforms, and accessories;

- Athletes who compete at one Varsity-affiliated gym are prohibited from transferring to another Varsity-affiliated gym without permission;

- Athletes and their families attending Varsity events are required to stay at Varsity-approved hotels (a policy Varsity has dubbed "stay to play"), allegedly at inflated rates, and any failure to comply with the stay-to-play policy could subject the entire team to disqualification;

- Webb has publicly stated that teams performing at Varsity competitions in full Varsity uniforms and accessories received higher scores; and

4

- Following the highly publicized Jerry Harris sex abuse scandal in 2020[1], USASF and USA Cheer began offering risk and safety training to member gyms and personnel, but the Varsity Defendants required members to pay additional fees to access this USASF/USA Cheer safety training.

(*Id.* at ¶¶ 56, 59, 61, 62, 64, 68, 113, 174-75.)

**B.    Doe's Allegations of Abuse**

Doe alleges that, at the time of the alleged abuse, he was a citizen and resident of Lorain County, Ohio.  (*Id.* at ¶ 14.)  In 2014, when Doe was 15 years old, Defendants Taji Davis, Brandon Hale, and ShowPro Choreography[2] contracted with Doe's gym in "Avondale, Ohio"[3] to provide choreography services to the gym's all-star cheerleading team.  (*Id.* at ¶ 188.)  Doe alleges that during this initial meeting, Hale and Davis accompanied Doe, his gym owners, and other minor athletes on a day trip to Cedar Point amusement park.  (*Id.* at ¶ 189.)

In April 2015, Doe transferred to a new cheerleading gym in Brecksville, Ohio.  (*Id.* at ¶ 190.) Doe alleges that his new gym would also contract with Hale, Davis, and ShowPro for choreography services.  (*Id.*)

Doe alleges that, "[b]eginning in 2016, Defendants Hale and Davis began to exchange messages with . . . Doe using an App."  (*Id.* at ¶ 191.)  Doe alleges that on or around July 28, 2016, when Doe was 17 years old, Hale and Davis returned to Ohio to provide "cheer training and choreography services to [Doe's] former gym."  (*Id.* at ¶ 192.)  Doe alleges that during this July 2016 trip to Ohio, "Davis and Hale once again exchanged messages with" Doe.  (*Id.* at ¶ 193.)  Doe alleges

---

[1] In 2020, Jerry Harris, a former Varsity-affiliated coach and star of the Netflix docuseries "Cheer," was accused of soliciting sex from two minor all-star cheerleaders.  (*Id.* at ¶ 132.)  In 2022, Harris pleaded guilty to and was sentenced on two counts related to soliciting sex from a minor.  (*Id.*)

[2] Although Doe does not explicitly allege in his Complaint that Hale owns or otherwise controls ShowPro, according to Doe's service documents, Hale and ShowPro Choreography share an address.  (Doc. Nos. 67, 68.)  Moreover, Doe served ShowPro "courtesy of" Hale. (*Id.*)

[3] The Court observes that there is no such town in Ohio as "Avondale."  Doe does not otherwise identify the name of his former gym.

5

that, at that time, Hale and Davis knew that Doe was under 18 years old and a USASF member athlete. (*Id.*)

Doe alleges that, despite their knowledge of Doe's age and status as a USASF member, Hale and Davis "pressed" Doe to visit them at their hotel room in Westlake, Ohio. (*Id.* at ¶ 194.) Doe alleges that he "was hesitant and initially refused" their invitation. (*Id.* at ¶ 195.) However, Doe ultimately went to Hale's and Davis's hotel room. (*Id.*) Upon arrival, Doe learned that Hale and Davis were also going to provide a cheerleading skills clinic for his current gym during their visit to Ohio. (*Id.*) Hale and Davis offered Doe liquor, which he refused. (*Id.* at ¶ 196.) Thereafter, Hale and Davis commenced to have sex with Doe. (*Id.*) Doe alleges that, according to his eventual police report, he told law enforcement that Hale and Davis had sex with Doe "multiple times despite the fact that [Doe] demonstrated his reluctance and attempted to leave." (*Id.* at ¶ 197.) At the time of the incident, Hale was 25 and Davis was 24. (*Id.* at ¶ 198.)

Doe alleges that after Hale's choreography contract with Doe's current gym ended, Doe was called into a meeting by his current gym's owner "to discuss potential inappropriate conduct between" Doe and Hale. (*Id.* at ¶ 199.) Doe alleges that he "was made aware of accusations that . . . Hale was giving [Doe] preferential treatment." (*Id.*) Other than the gym owner's meeting to question Doe about the anonymous complaint regarding Hale's "preferential treatment," Doe's gym made no other inquiries and took no other action, and Hale continued to work as a USASF choreographer. (*Id.*)

Four years later, around June 20, 2020, and knowing that Hale and Davis still regularly worked with minors in the competitive cheer community, Doe sent an anonymous e-mail to two all-star gyms, one in California and one in North Carolina, reporting Hale's and Davis's abuse. (*Id.* at ¶ 200.) Only the gym in California responded to Doe's anonymous e-mail. (*Id.* at ¶ 202.) The

6

California gym alerted California law enforcement to Doe's report and requested that Doe provide more information. (*Id.*) On June 23, 2020, USASF case manager Ginger Wilczak contacted Doe's anonymous e-mail address, asking him to reveal his identity. (*Id.* at ¶ 203.) On June 25, 2020, Doe came forward to make a formal report to USASF. (*Id.* at ¶ 204.) Thereafter, Wiczak notified Doe that local Ohio law enforcement had been contacted and that she would meet with USASF's vice president of membership, Amy Clark, about Doe's allegations. (*Id.* at ¶¶ 205-06.)

On June 28, 2020, Clark e-mailed local Ohio law enforcement and explained that Doe met Hale and Davis through the sport of all-star cheerleading. (*Id.* at ¶ 208.) Clark explained that the "older person" asked a 17-year-old minor to come to his hotel room at 1:30 a.m., and that this older person "held, what could be argued, as [*sic*] a position of power over him." (*Id.*) Clark expressed concern that though she understood Ohio's age of consent to be 16 years old, there was a seven-year age difference. (*Id.*) Then Clark wrote as follows:

> At minimum, we have an alleged perpetrator, who used his position of power and age differential to "encourage" a 17 year old to come to his hotel room. At worse [sic], we have an alleged perpetrator who has demonstrated his modus operandus [sic], and may have done the same thing to additional minor athletes in our sport.
>
> And, is there a legal, moral, or ethical duty to investigate this situation even if the victim does not want to press charges?...I just have concerns that if it is not pursued – someone may find all of us negligent in our duty to protect minor athletes.

(*Id.*)

On July 30, 2020, local law enforcement notified Doe that they would not pursue charges against Hale and Davis because Doe was over 16 years old at the time of the alleged assault. (*Id.* at ¶ 210.) Doe alleges that the detective handling the investigation nevertheless opined to Doe "what happened with Defendants Hale and Davis was inappropriate." (*Id.*)

Doe continued to follow up on his report to USASF.  (*Id.* at ¶ 211.)  On September 18, 2020, USASF's SafeSport administrator confirmed that USASF had initiated a third-party investigation into Doe's allegations regarding Hale and Davis.  (*Id.*)  On September 23, 2020, Doe met with the third-party investigator via Zoom and provided the names of two former teammates to serve as character witnesses.  (*Id.* at ¶ 213.)  During the investigation, Hale and Davis were temporarily suspended from USASF eligibility, but on November 19, 2020, Hale and Davis were removed from the suspended list.  (*Id.* at ¶ 214.)  On November 20, 2020, Doe e-mailed Clark to discuss Hale's and Davis's reinstatement, but she notified Doe that he would be speaking with USASF's counsel instead.  (*Id.* at ¶¶ 215-16.)  According to Doe's transcript of his call with USASF's counsel, which he included in his Complaint, USASF's counsel informed him that USASF believed the evidence did not turn out in Doe's favor and that there was no proof the alleged "violation" had occurred.  (*Id.* at ¶ 218.)  Doe alleges that after his call with USASF's counsel, Hale and Davis were permitted to continue working with minor athletes at USASF member gyms.  (*Id.*)

## II.    Procedural History

Doe filed this case on November 28, 2022.  (Doc. No. 1.)  In his Complaint, Doe alleges six counts against Davis and Hale: Count 1, violation of the Child Abuse Victims' Rights Act of 1986, 18 U.S.C. § 2255; Count 2, civil conspiracy in violation of the RICO Act, 18 U.S.C. §§ 1962(c) and (d); Count 3, gross negligence; Count 5, assault and battery; Count 10, civil conspiracy; and Count 12, intentional infliction of emotional distress.  (*Id.*)

Doe also alleges eleven counts against ShowPro: Counts 1, 2, 3, 5, 10, and 12, as well as Count 4, negligent supervision; Count 7, unjust enrichment; Count 9, negligent security; Count 11,

respondeat superior; and Count 13, violation of Ohio's Consumer Sales Practices Act, Ohio Rev. C. § 1345.02(A). (*Id.*)

In his Complaint, Doe alleges two bases upon which this Court may exercise subject-matter jurisdiction here. First, Doe alleges that the Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, because "[t]his action arises pursuant to, and involves questions requiring the interpretation of[,] the law of the United States . . . ." (*Id.* at ¶ 12.) Second, Doe alleges that "[s]upplemental jurisdiction over state law claims is conferred upon the Court by 28 U.S.C. § 1367(a)." (*Id.* at ¶ 13.) Notably, Doe's Complaint does *not* invoke diversity jurisdiction under 28 U.S.C. § 1332 as a basis for subject-matter jurisdiction in this case.

Davis filed his Motion to Dismiss on June 5, 2023. (Doc. No. 98.) On June 29, 2023, Doe filed his Opposition to Davis's Motion. (Doc. No. 100.) On July 12, 2023, Davis filed his Reply in Support of his Motion. (Doc. No. 106.) Thus, Davis's Motion is now ripe for a decision.

Hale and ShowPro did not answer or otherwise respond to Doe's Complaint. On May 30, 2023, Doe requested that the Clerk enter default against Hale and ShowPro. (Doc. No. 96.) On May 31, 2023, the Clerk entered default against Hale and ShowPro. (Doc. No. 97.) To date, Doe has not moved for default judgment against Hale or ShowPro.

## III. Standard of Review

Davis moves to dismiss Doe's claims against him for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Doc. No. 98.) Under Rule 12(b)(6), the Court accepts Doe's factual allegations as true and construes the Complaint in the light most favorable to Doe. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,'

(2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat. Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

10

IV.     **Analysis**

A.      **Count 1, 18 U.S.C. § 2255**

In Count 1, Doe brings a claim under 18 U.S.C. § 2255 against all Defendants.  18 U.S.C. § 2255 was enacted as part of the Child Abuse Victims' Rights Act of 1986 ("CAVRA") and "empowers victims of child sexual abuse to recover money for the harms caused by their abusers." *Prewett v. Weems*, 749 F.3d 454, 457 (6th Cir. 2014).

The statute reads, in relevant part, as follows:

> (a) In general.—Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred. The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. § 2255(a).

Under § 2255, a plaintiff "must establish a liability predicate for the award and a damages predicate for the award." *Prewett*, 749 F.3d at 457.  "As for liability, the victim must show that his abuser **violated a qualifying criminal statute**." *Id.* (emphasis added).  As discussed below, Doe alleges that he was a victim of abuse in contravention of § 2422, one of the qualifying criminal statutes enumerated in § 2255(a).  *See infra*.  Section 2422 provides, in relevant part, as follows:

> **(a)** Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

> **(b)** Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States

11

knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422.

No criminal conviction is necessary to recover damages under § 2255. *Prewett*, 749 F.3d at 458. Rather, a plaintiff need only show, by a preponderance of the evidence, that a defendant committed one of the enumerated offenses. *Id.*

Doe alleges that the specific abusive acts were performed by "Defendants Hale, Davis, and ShowPro against Plaintiff John Doe 1 and enabled by the ongoing certification and ratification of the Varsity Defendants, Defendant USASF, Defendant USA Cheer, Defendant Charlesbank, and Defendant Bain Capital." (Doc. No. 1, ¶ 253.) Doe alleges that Hale, Davis, and ShowPro qualify as covered individuals under the statute and that the facts of this case indicate that the abuse occurred at "events," as defined by the statute. (*Id.* at ¶ 256.) Doe alleges that he "was a minor at the time he was sexually abused and assaulted in contravention of 18 U.S.C. § 2422, thus constituting violations of 18 U.S.C. § 2255," and that he has suffered personal injuries because of these violations of law. (*Id.* at ¶¶ 258-59.)

Davis argues that Doe's § 2255 claim against him fails because Doe does not allege that Davis committed any criminal offense that could be construed as a predicate act under § 2422. (Doc. No. 98, PageID# 1171-72.) Davis argues that Doe admits in his own Complaint that Ohio law enforcement told Doe that there was no legal basis for bringing criminal charges against Davis or Hale based on the events of July 28, 2016 because Doe was over the age of 16, which is the age of statutory consent in Ohio. (*Id.* at PageID# 1171.) Davis argues that Doe having consensual sex with Davis, even if Doe had feelings of reluctance as pleaded in the Complaint, is not a criminal act in

12

Ohio.  (*Id.* at PageID# 1173.)  Davis contends that because Doe fails to allege that Davis committed any predicate criminal sexual offense under § 2422, Doe's § 2255 claim necessarily fails and should be dismissed.  (*Id.*)

In his Opposition, Doe argues that he alleged that Davis committed a predicate act under § 2422(b).  (Doc. No. 100, PageID# 1352-53.)  Doe argues that he alleged in his Complaint that when he was 14 or 15, Davis "began messaging him and grooming him via cellphone."  (*Id.* at PageID# 1353.)  Doe argues that he alleged that Davis "coerced Plaintiff via telephone to come to Defendant Davis' hotel room where Defendant Davis thereafter sexually assaulted Plaintiff who protested and attempted to leave the room."  (*Id.*)  Therefore, Doe argues, he has "alleged facts on which Defendant Davis could be charged with multiple criminal offenses including kidnapping and forcible rape."  (*Id.*)  Doe argues that he has adequately alleged a predicate act such that Davis is liable under § 2255.  (*Id.*)

The Court concludes that Doe fails to state a claim under § 2255 against Davis because Doe fails to allege that Davis performed a predicate act under § 2422(b), such that Davis could be held liable under § 2255.  To establish a predicate act under § 2422(b), Doe must allege that Davis used a means of interstate commerce to persuade, induce, entice, or coerce "any individual who has not attained the age of 18 years, to engage in prostitution or **any sexual activity for which any person can be charged with a criminal offense**."  18 U.S.C. § 2422(b) (emphasis added).  Specifically, Doe fails to allege that Davis engaged in any conduct for which Davis could have been charged with a criminal offense associated with engaging in any sexual activity.

As an initial matter, though Doe argues in his Opposition that Davis "could be charged with multiple criminal offenses including kidnapping and forcible rape," the plain text of § 2422(b) forecloses such an argument.  Section 2422(b) makes clear that the criminal offense must be

13

associated with some kind of "sexual activity."  Kidnapping is not a "sexual activity for which any person could be charged with a criminal offense."  18 U.S.C. § 2422(b).

Second, according to Doe's Complaint, Doe was at least 16 years old when Davis began messaging him via an unnamed app.  (Doc. No. 1, ¶ 191-93.)  Doe alleges that Davis began exchanging messages with Doe "beginning in 2016 . . . ."  (*Id.* at ¶ 191.)  Though Doe does not allege when in 2016 Davis began sending him messages, Doe would have been either 16 or 17 years old, as Doe was 17 years old by July 28, 2016.  (*Id.* at ¶¶ 192-93.)  Thus, Doe's claim in his Opposition that Davis "began messaging him and grooming him via cellphone" when Doe was 14 or 15 is belied by the allegations set forth in Doe's own Complaint.  (Doc. No. 100, PageID# 1353.)  Moreover, although Doe claims in his Opposition that Davis began "grooming [Doe] via cellphone," Doe's Complaint does not support such an assertion.  (*Id.*)  Doe does not allege any detail about the content of these messages, only that Davis sent Doe messages during two different time periods in 2016.  Doe may not ask the Court to consider new or different allegations in his Opposition that he did not plead in his Complaint.  *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020).  There are no allegations that suggest that Davis's messages to Doe constituted sexual activity for which Davis could be charged with a criminal offense.

Third, Doe does not allege that Davis enticed or coerced Doe, who was at the time 17 years old, to engage in "any sexual activity for which [Davis] can be charged with a criminal offense."  18 U.S.C. § 2422(b).  Indeed, Doe alleges in his Complaint that Ohio law enforcement decided "not [to] pursue charges against Defendants Hale and Davis **because Plaintiff was over 16 years old at the time of the incident**."  (Doc. No. 1, ¶ 210, emphasis added.)  According to Doe, "the investigating detective nevertheless informed [Doe] that what happened with Defendants Hale and Davis was

14

inappropriate." (*Id.*)  The Court shares the detective's sentiment.  The alleged conduct *was* inappropriate.  However, as pleaded in Doe's Complaint, the alleged conduct was not criminal.  Doe argues in his Opposition that Davis could be charged with "forcible rape."  (Doc. No. 100, PageID# 1353.)  Ohio's rape statute, Ohio Rev. C. § 2907.02(A)(2), provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."  Doe's Complaint does not allege that Davis or Hale used force or the threat of force to coerce Doe into having sex with either of them.  (*See* Doc. No. 1, ¶¶ 191-97.)  And, as Doe alleged in the Complaint, after receiving Doe's June 2020 report, speaking with a USASF representative, and reviewing screenshots of Davis's and Hale's July 2016 messages to Doe, local Ohio law enforcement declined to press criminal charges against either Davis or Hale because Doe was over the legal age of consent.  (*Id.* at ¶¶ 206-10.)

The Court concludes that Doe does not allege that Davis engaged in a predicate criminal sexual act under § 2422(b), such that Davis could be held liable pursuant to § 2255.  Thus, the Court concludes that Doe fails to state a § 2255 claim against Davis.  Count 1 is dismissed.

**B.    Count 2, Violations of the RICO Act, Pursuant to 18 U.S.C. §§ 1962(c) and (d)**

In Count 2, Doe alleges that all Defendants committed civil conspiracy in violation of the RICO Act, pursuant to 18 U.S.C. §§ 1962(c) and (d).  (Doc. No. 1, ¶¶ 261-84.)  18 U.S.C. § 1964(c) provides a civil cause of action for any "person injured in his business or property by reason of a violation of section 1962 of this chapter . . . ."  Doe alleges that all Defendants violated § 1962(c) and (d).  (*Id.*)  Section 1962(c) provides that "[i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which

affect, interstate or foreign commerce." 18 U.S.C. § 1962(c). Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

A substantive RICO claim brought under § 1962(c) has four elements: "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Courser v. Allard*, 969 F.3d 604, 621 (6th Cir. 2020) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). A RICO plaintiff must also establish that he suffered an injury to "business or property" because of the defendant's unlawful conduct. *Jackson v. Sedgwick Claims Man. Servs., Inc.*, 731 F.3d 556, 563-64 (6th Cir. 2013). Section 1962(d) makes it "unlawful for any person to conspire to violate any of" § 1962's provisions, including § 1962(c).

Davis argues that Doe's entire RICO claim fails because it is implausibly pleaded and should be dismissed because Plaintiff does not put Davis "on notice of what the claim speaks to . . . ." (Doc. No. 98, PageID# 1174.) For the following reasons, the Court concludes that Doe fails to plausibly allege a RICO claim under either § 1962(c) or (d).

### 1. Doe Fails to Allege RICO standing

RICO's standing requirement has two elements: (1) injury to business or property; and (2) causation. *Jackson*, 731 F.3d at 563-64; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). *See also Saro v. Brown*, 11 Fed. App'x 387, 389 (6th Cir. 2001). An "injury to business or property" under RICO excludes "personal injuries" and also those injuries flowing therefrom. *See Jackson*, 731 F.3d at 563-64. Moreover, "[t]he injury to business or property must be concrete," rather than speculative or intangible. *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 699 (E.D. Mich. 2020) (citing *Saro*, 11 F. App'x at 389) (internal quotations omitted). Doe claims that he suffered two injuries

16

sufficient to convey RICO standing. First, he claims that he was injured because he "had a property interest in his membership dues . . . and other fees and costs . . . ." (Doc. No. 1, ¶ 281.) Second, he claims that he had a property interest in the "continued ability to cheer competitively." (*Id.*)

### a) Loss of Ability to Cheer Competitively

The Court begins with Doe's second alleged injury, that Doe had a property interest in the "continued ability to cheer competitively," which would have allowed Doe to gain "social media notoriety, 'Cheerlebrity' status, scholarship opportunities," and even possibly to become a cheer coach, gym owner, and/or event promoter himself. (Doc. No. 1, ¶ 281.) The Court rejects this argument. First, this is too speculative of an injury to support RICO standing. *See Raymo*, 475 F. Supp. 3d at 699. In *Jane Doe 1, et al. v. Varsity Brands, LLC, et al.*, the District of South Carolina considered, and rejected, the identical argument that the plaintiffs' loss of their continued ability to cheer competitively was a sufficient injury to confer RICO standing. *See Jane Doe 1, et al. v. Varsity Brands, LLC, et al.*, No. 6:22-cv-2957, 2023 WL 4088483, at *7 (D.S.C. June 20, 2023). The *Jane Doe 1* plaintiffs, nine former all-star cheerleaders, asserted RICO claims that were nearly identical to Doe's instant RICO claims. *Id.* The *Jane Doe 1* court reasoned that the "[p]laintiffs had, at best, mere expectancy interests in realizing future financial and business opportunities in which [they] and their famil[ies] invested." *Id.* (internal quotations omitted) (citing *Bowen v. Adidas Am., Inc.*, 541 F. Supp. 3d 670, 679-80 (D.S.C. 2021) (holding college basketball player did not have a recoverable expectancy interest in potential lost earnings he hoped to obtain as a potential first-round NBA draft pick)). Likewise, here, a hoped-for career in all-star cheerleading is too speculative to comprise a protected property right under RICO.

Second, even if the loss of a potential career in all-star cheerleading was a concrete injury, such an injury could not confer RICO standing as Doe's loss of his alleged potential continued ability to cheer is derivative of his personal injury. In other words, Doe's loss of his continued ability to cheer stems directly from any personal injuries Doe suffered as the result of Hale's and Davis's alleged sexual abuse. *Jackson*, 731 F.3d at 565-66; *see also Gucwa v. Lawley*, 731 F. App'x 408, 412 (6th Cir. 2018) ("Even though personal injuries may lead to monetary damages, such personal injuries and their associated pecuniary losses—including medical expenses—do not confer relief under § 1964(c)."). Thus, the Court concludes that Doe fails to sufficiently allege RICO standing based on his alleged loss of his ability to compete in competitive cheerleading.

### b) Membership Dues and Fees

Doe also contends that he had a property interest in his membership dues and fees remitted to the Defendants. (Doc. No. 1, ¶ 281.) "Money, of course, is a form of property." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979). Doe paid due and fees to the Varsity Defendants, USASF, and/or USA Cheer *before* Davis and Hale allegedly assaulted him. *Jane Doe 1*, 2023 WL 4088483, at *9. Thus, Doe's dues and fees did not derive from his alleged non-compensable personal injuries, so as not to be compensable under RICO. *Id.* (concluding same).

However, the Court concludes that Doe fails to plausibly allege any proximate cause between Defendants' purported misrepresentations about athlete safety and Doe paying his membership dues, fees, and other incidental costs to them. "[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992)). "When a court evaluates a RICO claim

18

for proximate causation, the central question it must ask is whether the alleged violation led ***directly*** to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (emphasis added). Doe's only allegation as to proximate cause in the RICO context is that "[t]he actions of the Enterprise and its conspirators were the direct and proximate cause of these injuries to the Plaintiff." (Doc. No. 1, ¶ 282.) This is no more than a threadbare recital of one of the elements of a civil RICO claim. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Doe's allegations elsewhere in his Complaint belie his claim that he paid his dues and fees because of Defendants' representations about safety. Rather, Doe alleges that he paid his membership dues, fees, and other incidental expenses to Defendants because he was required to do so to participate in Varsity-sponsored competitions and events. (Doc. No. 1, ¶ 25.) For example, Doe alleges that " . . . Defendant Webb mandated that All-star athletes cheering on behalf of Varsity-affiliated gyms purchase a USASF membership **as a requirement to compete at Varsity-sponsored events**." (*Id.* at ¶ 56, emphasis added.) Doe also alleges that "[a]ll-star athletes competing on behalf of Varsity-member gyms pay monthly or annual fees to the gym as well as annual fees to the Varsity Defendants **for music, training, competition attendance, accessories, and other related fees**." (*Id.* at ¶ 61, emphasis added.) Thus, based on the face of his Complaint, Doe paid membership fees, dues, and other incidental costs to Defendants because he wished to participate in competitive all-star cheerleading, not because of Defendants' alleged misrepresentations about safety. Accordingly, having failed to allege that he was injured because of Defendants' predicate acts, Doe fails to state a civil RICO claim based on membership dues, fees, and/or other incidental costs. *See also, e.g., Gilbert v. U.S. Olympic Comm.*, No. 18-cv-00981-CMA-MEH, 2019 WL 1058194, at *25, *report and recommendation adopted in relevant part by* 423 F.

Supp. 3d 1112 (D. Colo. 2019) (rejecting former national taekwondo athletes' argument that they had civil RICO standing based, in part, on the $50 annual membership fee they paid to USA Taekwondo because the athletes paid their fees to engage in USAT events, not because of the defendants' predicate acts).

### 2.    Doe Fails to Allege a RICO "Association-in-Fact" Enterprise

Even if Doe could establish RICO standing, his § 1962(c) claim would nevertheless fail because he does not sufficiently allege the existence of a RICO "association-in-fact" enterprise.

A RICO association-in-fact enterprise "includes any . . . group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  In *Boyle v. U.S.*, the Supreme Court described the characteristics of such an enterprise:

> Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence.

*Boyle v. U.S.*, 556 U.S. 938, 948 (2009). Thus, an association-in-fact enterprise "has at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946.

Here, Doe alleges that all Defendants formed an association-in-fact enterprise.  (Doc. No. 1, ¶ 267.)  Doe alleges that each defendant "operated as a single unified entity with the common goal of taking billions of dollars from minor athletes who wanted to be a part of the competitive cheer world Defendants oversee, as well as to perpetuate a pipeline of new child-athletes, coaches and gyms."

20

(*Id.* at ¶ 239.) Doe alleges that each defendant participated in the operation and management of the enterprise. (*Id.* at ¶ 241.) Doe further alleges that the enterprise "consists of a group of persons associated together for the common purpose of recklessly, intentionally, and willfully endangering the Plaintiff as a minor athlete by exposing him to illegal sexual abuse and exploitation of children while continuously and repeatedly taking money from Plaintiff, and also assuring his parents and/or guardians he was particularly safe in order to take this money." (*Id.* at ¶ 270.)

The Court concludes that Doe fails to plead any non-conclusory allegations that Defendants shared the common purpose of exposing Doe to sexual abuse while repeatedly taking his money. *Boyle*, 556 U.S. at 946. While Doe's Complaint contains several allegations about Davis's and Hale's alleged sexual abuse of Doe in July 2016, Doe does not offer up any factual allegations that the other RICO defendants shared a common purpose with Davis and Hale of exposing Doe to sexual abuse. (*See* Doc. No. 1.) Doe's allegations regarding the specific acts of abuse relate only to actions allegedly taken by Hale and Davis, not to actions taken by any other defendant. (*Id.* at ¶¶ 187-219.) Doe's allegations that all Defendants shared in a "common purpose" in contravention of RICO to sexually abuse Doe are conclusory and do not rise above the level of mere speculation. *Bassett*, 528 F.3d at 430 (citing *Twombly*, 550 U.S. at 555-56). Accordingly, the Court concludes that Doe fails to allege the existence of a RICO "association-in-fact" enterprise. Doe's § 1962(c) claim fails.

### 3. Doe Fails to Allege RICO Conspiracy Claim

Because Doe's § 1962(c) RICO claim fails for the reasons set forth above, Doe's RICO § 1962(d) claim likewise fails. Without a viable § 1962(c) claim, Doe's conspiracy claim under § 1962(d) necessarily fails. *See* 18 U.S.C. § 1962(d); *see also, e.g., Aces High Coal Sales, Inc. v. Cmnty Bank & Tr. W. Ga.*, 768 Fed. App'x 446, 450 (6th Cir. 2019) ("Because plaintiffs failed to

plausibly allege a violation of § 1962(b) or (c), the district court properly dismissed the RICO conspiracy claim as well."); *see Marinac v. Todd*, No. 1:20-cv-1571, 2022 WL 3904049, at *14 (N.D. Ohio Aug. 30, 2022) ("[B]ecause plaintiffs have failed to successfully allege all the elements of a substantive RICO violation, plaintiffs have necessarily failed to plausibly allege a RICO-conspiracy claim."). Accordingly, Doe's RICO claim is dismissed in its entirety.

### C.    Remaining State Law Claims

Having dismissed Doe's two federal claims against Davis, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims against him.

Pursuant to 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over state law claims once they have dismissed all claims over which they had original jurisdiction. "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[A] district court has broad discretion to decide whether to exercise jurisdiction over state law claims." *Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 424 (6th Cir. 2015). However, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996); *accord Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.").

22

Here, the Court uses its "broad discretion" in deciding not to exercise supplemental jurisdiction over Doe's remaining state law claims. *Smith*, 603 F. App'x at 424. The Court concludes that issues of comity support the Court's decision to decline jurisdiction over Doe's state law claims. As other courts have recognized, "[t]he interest in avoiding needless decisions on state-law issues as a matter of comity weighs heavily against supplemental jurisdiction." *Howell v. Buckeye Ranch, Inc.*, No. 2:11-cv-1014, 2013 WL 1282518, at *8 (S.D. Ohio Mar. 27, 2013); *see also Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 522 (6th Cir. 2007) (noting "the Supreme Court's general comity-related principle that residual supplemental jurisdiction be exercised with hesitation, to avoid needless decisions of state law"); *White v. City of Cleveland, et al.*, No. 1:17-cv-1165, 2020 WL 7640932, at *24 (N.D. Ohio Dec. 23, 2020); *Barrio Bros., LLC v. Revolucion, LLC*, No. 1:18-cv-2052, 2021 WL 2895509, at *18 (N.D. Ohio July 9, 2021). Were the Court to retain jurisdiction here, it would be required to delve into numerous purely state law claims, as well as Davis's likely affirmative defenses to include Ohio's statute of limitations, as the Court's rulings on Doe's federal law claims do not fully resolve Doe's remaining state law claims. Such purely state-law decisions are better reserved for a state court.

Additionally, considerations regarding judicial economy, convenience and fairness do not outweigh the Court's comity concerns. It is not apparent that it would be *more* convenient or fair to litigate in an Ohio federal, rather than state, court. Doe does not allege that Davis is a citizen of Ohio. (Doc. No. 1, ¶ 16.) Litigating in state court will be at least as convenient for the parties and witnesses as litigating in this Court, as both courts are located only a few blocks apart in Cleveland, Ohio. *See Fox v. Brown Memorial Home, Inc.*, 761 F. Supp. 2d 718, 725 (S.D. Ohio 2011). Moreover, this case has not yet progressed past the pleading stage. No discovery has commenced, no trial date is set, and

the matter has only been pending in federal court for a matter of months.  *Cf. Barrio Bros.*, 2021 WL 2895509, at *18.

Accordingly, the Court declines to exercise supplemental jurisdiction over Doe's state law claims.  Davis's Motion to Dismiss Doe's state law claims are denied without any prejudice to any right Davis may have to refile such motions in any state court proceedings.

### D.    Defendants Hale and ShowPro

Having dismissed Doe's federal claims against Davis, *see supra*, as well as against the other corporate defendants (*see* Doc. Nos. 108, 109), the only defendants that remain in this case are Hale and ShowPro.  Doe's federal claims against Hale and ShowPro are identical to the federal claims asserted against Davis and the corporate defendants.  (Doc. No. 1, ¶¶ 252-84.)  For the following reasons, the Court concludes that it will *sua sponte* set aside the entry of default as to Hale and ShowPro, dismiss the federal claims against Hale and ShowPro, and decline to exercise supplemental jurisdiction over the remaining state law claims.  (*See* Doc. Nos. 108, 109.)  *See Annette v. Haslam*, No. 3:18-cv-1299, 2020 WL 5226622, at *2 (M.D. Tenn. Apr. 29, 2020) (*sua sponte* setting aside entry of default and dismissing claims against the final defendant, where the plaintiff's identical claims against 23 other defendants were already dismissed), *report and recommendation adopted at* 2020 WL 2520512; *Courser v. Allard*, No. 1:18-cv-874, 2019 WL 6907137, at *1 (W.D. Mich. Dec. 19, 2019) (*sua sponte* setting aside entry of default against two remaining defendants, dismissing federal claims against defendants, and declining supplemental jurisdiction over the state-law claims).

Under Fed. R. Civ. P. 55(c), "[t]he court may set aside an entry of default for good cause."  To determine whether "good cause" exists for setting aside an entry of default, the court considers the following factors: (1) whether the plaintiff will suffer prejudice, (2) whether the defendant has a

24

meritorious defense, and (3) whether culpable conduct of the defendant led to the default.  *See Waifersong, Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992) (citing *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983); 10 Charles A. Wright et al., *Federal Practice and Procedure* § 2692, 2694 (1983)).  Although Hale and ShowPro have not filed a motion to set aside the entry of default, the Court may act *sua sponte* to set aside the entry of default under Rule 55(c).  *Annette*, 2020 WL 5226622, at *2 (citing *Mcintyre v. Ogemaw Cnty. Bd. of Commissioners*, No. 15-cv-12214, 2016 WL 4917537 at *3 (E.D. Mich. Sept. 15, 2016)).  Rule 55(c) leaves the decision to set aside the entry of default to the discretion of the trial judge.  *Shepard Claims Service, Inc. v. William Darrah & Associates*, 796 F.2d 190, 193 (6th Cir. 1986); *Courser*, 2019 WL 6907137 at *2.

In this case, consideration of these factors weigh in favor of setting aside the entry of default against Hale and ShowPro.  Most importantly, the second factor, whether Hale and ShowPro have meritorious defenses, weighs heavily in favor of setting aside the entry of default.  *See Courser*, 2019 WL 6907137, at *2 (*sua sponte* setting aside entry of default based solely on analysis of second factor under Rule 55(c)).  As discussed above, as well as in the Court's other opinions as to the Corporate Defendants, Doe's federal § 2255 and RICO claims fail as a matter of law.  (Doc. Nos. 108, 109.) Hale and ShowPro have a meritorious defense to Doe's § 2255 claim: Doe did not allege that Hale or ShowPro engaged in a predicate act under § 2255.  *See supra.*  Hale and ShowPro also have a meritorious defense to Doe's RICO claim: Doe cannot establish standing or an association-in-fact under RICO.  *Id.*  Not only are these defenses "good at law"—all that is required under Rule 55(c)— but these defenses have actual merit based upon the facts of this case and have led to the dismissal of

25

identical claims against all other defendants in this case.  *Annette*, 2020 WL 5226622, at *2 (citing *Courser*, 2019 WL 6907137, at *2).

With respect to the first factor, prejudice to Doe, the Court concludes that Doe will not suffer prejudice if the default is set aside as to Hale and ShowPro when the Court has already dismissed Doe's identical federal claims against every other defendant.  Moreover, setting aside the default against Hale and ShowPro allows the instant case to be resolved in its entirety, so that Doe may "proceed with an appeal from a final judgment if [he] so chooses."  *Id.*  With respect to the third factor, the defendants' culpable conduct, even if the Court assumes *arguendo* that Hale and ShowPro have acted negligently and/or unreasonably in failing to respond to Doe's lawsuit, negligent and/or unreasonable conduct does not demonstrate the type of culpability necessary to weigh against setting aside the entry of default.  *Id.*  Accordingly, the Court exercises its discretion to set aside the entry of default against Hale and ShowPro.  For the reasons set forth above, the Court dismisses Doe's federal claims against Hale and ShowPro and further declines to exercise supplemental jurisdiction over Doe's remaining state law claims against Hale and ShowPro.  *Courser*, 2019 WL 6907137, at *2.

**V.      Conclusion**

Davis's Motion to Dismiss (Doc. No. 98) is GRANTED IN PART and DENIED IN PART. The Court DECLINES to exercise supplemental jurisdiction over Doe's remaining state law claims against Davis. The Court further sets aside the entry of default as to Hale and ShowPro. Counts 1 and 2 against Hale and ShowPro are DISMISSED.  The Court DECLINES to exercise supplemental jurisdiction over Doe's state law claims against Hale and ShowPro.

**IT IS SO ORDERED.**

                                                                  *s/Pamela A. Barker*
                                                                  PAMELA A. BARKER
Date:  August 2, 2023                          U. S. DISTRICT JUDGE

27